**Linda HINDLEY, Plaintiff,**

**v.**

**SELTEL, INC., a Delaware Corporation, Defendant.**

**No. 87 C 5497.**

United States District Court, N.D. Illinois, E.D.

Oct. 26, 1987.

Simon L. Love, Chicago, Ill., for plaintiff.

Harry Sangerman, McDermott, Will & Emery, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Linda Hindley brings this diversity action against defendant Seltel, Inc. for breach of a permanent employment contract, inducement to breach the contract and misrepresentation. Seltel moved to dismiss. For the following reasons, we grant the motion to dismiss.

### I

For purposes of this motion, we take as true the following allegations in Hindley's complaint. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). Seltel employed Hindley in September 1981. At various times during Hindley's tenure with Seltel, the terms and conditions of her employment were set forth in, among other things, Seltel's Policy Statement and Compensation Plans. The Policy Statement, in the "Employment Qualifications" provision, states:

... All employment practices are to provide that all individuals be recruited, hired, assigned, advanced, compensated and retained on the basis of their qualifications ...

Complaint at 2. In a later section, the Policy Statement provides that:

(1) An employee terminated for cause is not entitled to vacation pay for the current year ...

(2) An employee terminated for any reason prior to six full calendar months of employment is not entitled to vacation pay;

Complaint at 2. The 1986 Compensation Plan provided that:

Beginning January 1st, 1986, the previous Seltel compensation plan of base/commission will now be combined to offer each sales executive a total remuneration. This new total compensation will be divided between base salary and commission reflected in an

eighty/twenty split.... The merit commission will be paid on the final day of the month following the close of each quarter. This compensation is designated as merit income and is not a guaranteed amount but rather a sum that should be readily attainable based upon [several] factors as viewed by Seltel management.

Complaint, Exhibit A at 2.

Marty Miller, an employee and officer of Seltel, reported to management in Seltel's New York office that Hindley was lazy and her performance was unsatisfactory, and that she failed to meet her quotas. In a May 1986 salary review, Miller told Hindley that he was delighted that Hindley would receive a raise, that the raise was unfortunately low because Seltel was undergoing financial difficulties, and that Hindley will be appropriately rewarded when conditions improve. In June of 1986, Ray Johns, Seltel's Executive Vice President, informed Hindley that no decision had been made to interview to fill a management position that concerned Hindley, and that Hindley would participate in upcoming decisions on company reorganization.

On July 11, 1986, Seltel terminated Hindley without notice or a hearing. On June 19, 1987, Hindley filed this three-count action seeking compensatory and punitive damages from Seltel. Count I alleges breach of a contract formed from the Policy Statement and Compensation Plan that guaranteed Hindley permanent employment and pretermination notice and hearing. Count II alleges that Miller induced Seltel to breach the contract. Count III alleges that Miller's and Johns' statements to Hindley were misrepresentations that induced Hindley to continue employment with Seltel. Seltel moves to dismiss the action for failure to state a cause of action. We conclude that Hindley's three counts fail to state a claim upon which relief can be granted.

### II

A. *Breach of Contract and Inducement to Breach*

■ Seltel contends that Counts I and II fail to state a claim because they lack an

allegation of a clear promise of permanent employment and pretermination notice and hearing. Hindley responds that the alleged Policy Statement provisions regarding employee qualification and vacation pay and the Compensation Plan's base salary and merit commission provisions sufficiently set forth Seltel's contractual obligations. We conclude that Hindley has failed to allege sufficiently a permanent employment contract.

Under Illinois law, to state a cause of action for breach of an employment contract that guarantees permanent employment, the plaintiff must overcome the presumption of an employment-at-will by alleging a promise of permanent employment and valid consideration. *Ladesic v. Servomation Corp.*, 140 Ill.App.3d 489, 95 Ill.Dec. 12, 488 N.E.2d 1355 (1st Dist.1986). The promise alleged must be clear and definite. *Titchener v. Avery Coonley School*, 39 Ill.App.3d 871, 350 N.E.2d 502 (2d Dist.1976). The Compensation Plan salary and commission provisions and the Policy Statement vacation pay provisions are not sufficiently clear promises of permanent employment. While the Employee Qualifications provision may be sufficiently clear, Hindley has not alleged any consideration.

The Policy Statement creates contract rights of permanent employment and pretermination notice and hearing only if the "language of the policy statement contain[s] a promise clear enough that an employee would reasonably believe that an offer has been made." *Duldulao v. Saint Mary of Nazareth Hospital*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 318 (1987). The vacation pay provisions are not such language. At most, those provisions inform the employee that the employee is entitled to vacation pay if fired without cause after six months of employment. The provisions do not clearly state, let alone imply, a right to permanent employment.

Similarly, the pay provisions of the 1986 Compensation Plan do not clearly or implicitly promise permanent employment and pretermination notice and hearing. Finding otherwise would force the conclusion that any position offering an annual salary and performance commission includes as a matter of law a promise of permanent employment. Illinois law explicitly rejects that conclusion. *Medina v. Spotnail, Inc.*, 591 F.Supp. 190 (N.D.Ill.1984); *Palmateer v. International Harvester Co.*, 85 Ill. App.3d 50, 40 Ill.Dec. 589, 406 N.E.2d 595 (3d Dist.1980), *rev'd on other grounds*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981).

■ The Employee Qualification provision may, on the other hand, sufficiently set forth a clear promise of permanent employment. The provision indicates that an employee will not be terminated if the employee possesses a position's required qualifications. Seltel argues, however, that since that provision is set forth as part of Seltel's equal employment opportunity policy, the provision promises no more than that an employee's qualifications will outweigh any considerations of race, sex, age, etc. in determining employment status. We cannot rely on Seltel's representation in deciding this motion to dismiss, for we would be relying on evidence outside the pleadings, and Hindley has not had an opportunity to provide any contrary evidence. *Roman v. United States Postal Service*, 821 F.2d 382, 385 (7th Cir.1987). We must recognize the possibility that the Policy Statement contains the Employee Qualification provision in another more appropriate context that does not limit its reach as Seltel suggests.

Dismissal is nevertheless warranted because even if the Employee Qualification provision sets forth a clear promise of permanent employment, Hindley has failed to allege valid consideration for that contractual right. Hindley's foregoing alternative employment to continue employment with Seltel does not constitute sufficient consideration to allege a contractual right of permanent employment. *Barry Gilberg, Ltd. v. Craftex Corp., Inc.*, 665 F.Supp. 585, 594 (N.D.Ill.1987); *Ladesic*, 488 N.E.2d at 1356–57. Since "[t]he contract, assuming it exists, is unenforceable if no valid consideration is alleged," *Id.* at 1357, the Employee Qualification provision by itself does not state a claim, and we accordingly dismiss Counts I and II.

## B. *Misrepresentation*

 Count III fails, Seltel contends, because Hindley has failed to allege with particularity misrepresentations of fact. At most, Hindley's allegations set forth an implied promise of continued employment. We agree that such allegations are insufficient to state a misrepresentation action.

Under Illinois law, explicit promises to perform a future act without an accompanying intent to perform do not constitute actionable misrepresentation unless the misrepresentations are "alleged to be part of a scheme employed to accomplish the fraud." *Serig v. South Cook County Service Corp.*, 581 F.Supp. 575, 579 (N.D.Ill. 1984); *Brudnicki v. General Electric Co.*, 535 F.Supp. 84, 88 (N.D.Ill.1982). A plaintiff must set forth "specific, objective manifestations of fraudulent intent—a scheme or device." *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F.Supp. 1366, 1369 (N.D. Ill.1985). The disfavor that Illinois courts have expressed toward promissory fraud leads us to conclude that a claimant must allege at least explicit promises of future performance and cannot rely on implied promises to bring the action within the scheme or device exception to otherwise nonactionable promissory fraud. *Accord, Id.*

None of the alleged statements that form the basis of Hindley's misrepresentation count include explicit promises of continued employment. Hindley's claim rests on the implication of promised continued employment from statements of satisfactory performance and plans to include her in future business decisions. A mere implication does not constitute actionable misrepresentation, and we accordingly dismiss Count III.

### III

### *Conclusion*

For the reasons set forth above, this action is dismissed in its entirety. It is so ordered.