2025 IL App (1st) 231823-U

FOURTH DIVISION
Order filed: February 6, 2025

No. 1-23-1823

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 21283 |
| | ) | |
| JOSE CHAVEZ, | ) | Honorable |
| | ) | Michael B. McHale, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford concurred in the judgment.
Justice Ocasio specially concurred in the judgment.

**ORDER**

¶ 1    *Held*: The dismissal of the defendant's successive postconviction petition is affirmed because *Miller v. Alabama*, 567 U.S. 460 (2012), does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause of the Illinois Constitution, even when the defendant received a mandatory *de facto* life sentence.

¶ 2    The defendant, Jose Chavez, appeals the circuit court's second-stage dismissal of his successive petition for postconviction relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)), in which he argued that his *de facto* life sentence for a

crime that he committed when he was 18 years old violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Because we agree with the circuit court that *Miller v. Alabama*, 567 U.S. 460 (2012), does not provide cause for the defendant's failure to raise the claim earlier, we affirm the court's judgment.

¶ 3   In 2008, the defendant was convicted of first-degree murder for shooting and killing a 13-year-old boy during a 2005 drive-by shooting. The defendant was 18 years old at the time of the offense. He received a 58-year prison sentence, comprised of 29 years for first-degree murder and 29 years for personally discharging a firearm. The firearm enhancement was mandatory, and the defendant's effective sentencing range was 45 years to life. On appeal, the defendant contested one issue related to jury selection, and this court affirmed his conviction and sentence. See *People v. Chavez*, 402 Ill. App. 3d 1184 (2010) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 4   In 2011 and 2013, the defendant filed two unsuccessful petitions for postconviction relief. The initial petition raised issues again related to jury selection (see *People v. Chavez*, 1-11-2581 (2012) (unpublished summary order under Illinois Supreme Court Rule 23(c))), and the successive petition raised a claim concerning a note from a jury member expressing safety concerns (see *People v. Chavez*, 1-14-1639 (2015) (unpublished summary order under Illinois Supreme Court Rule 23(c))). Neither raised any issue related to his sentence.

¶ 5   In September 2017, the defendant filed a motion for leave to file a second successive postconviction petition and a proposed petition, which is the subject of the present appeal. In the motion and proposed petition, the defendant cited the United States Supreme Court case of *Miller v. Alabama*, 567 U.S. 460 (2012), for the proposition that his 58-year sentence was a *de facto* life

sentence that was unconstitutional under the eighth amendment of the United States Constitution (U.S. Const., amend. VIII). Although the defendant stated that his sentence also violated the Illinois Constitution, he did not articulate why or elaborate on that statement, and his motion and proposed petition only argued that his sentence violated the eighth amendment.

¶ 6    The circuit court granted the defendant leave to file the second successive petition, and the State then filed a motion to dismiss. In that motion, the State asserted that the defendant was not entitled to relief under *Miller* because he had already turned 18 prior to his offense, and the State added an argument that, although not expressly raised in the petition, the defendant's sentence also did not violate the Illinois Constitution's proportionate penalties clause. The defendant then filed a response disputing the State's assertion that the age of 18 was a definitive cut-off and adding an argument that, in the alternative, his sentence violated the proportionate penalties clause. The defendant then filed a supplemental response alerting the court to two recent appellate court cases applying *Miller* to young adults (*People v. Ruiz*, 2020 IL App (1st) 163145, and *People v. Johnson*, 2020 IL App (1st) 171362), which was followed by an amended supplemental response further discussing new cases applying *Miller* and elaborating on his earlier assertion that this sentence violated the proportionate penalties clause. Along with the amended supplemental response, the defendant also submitted an expert evaluation of his adolescent development.

¶ 7    After waiting for a ruling from the supreme court in *People v. Moore*, 2023 IL 126461, the circuit court granted the State's motion to dismiss. The court found that the defendant could not establish cause for his proportionate penalties claim, citing *Moore*'s holding that, because it does not apply to young adults, *Miller* "does not provide cause for a young adult to raise a claim under the proportionate penalties clause." *Id.* ¶ 40. This appeal follows.

¶ 8    The Act contemplates that only one petition be filed, and a successive petition may only be filed if the defendant "first obtains permission from the court and demonstrates to the court cause and prejudice for not having raised the alleged errors in his or her initial postconviction petition." *People v. Bailey*, 2017 IL 121450, ¶ 15. To establish cause, the defendant must "allege facts to explain why the claims being asserted in the successive petition could not have been raised in the initial postconviction petition." *Id.* ¶ 48. Although the cause-and-prejudice analysis is usually conducted by the court alone in determining whether the defendant should be granted leave to file a successive petition, the State may relitigate either cause or prejudice in a motion to dismiss after leave to file has been granted. *Id.* ¶ 26. When a postconviction petition has been dismissed without an evidentiary hearing, our review is *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 9    On appeal, the defendant abandons his eighth amendment claim and instead focuses on his claim that his sentence violates the proportionate penalties clause of the Illinois Constitution. Although the State argues that the defendant forfeited this claim by not raising it in his petition and by instead raising it for the first time in his response to its motion to dismiss, we need not decide that issue because we conclude that, regardless of forfeiture, the defendant has not demonstrated cause for his failure to raise the claim in his initial petition.

¶ 10    The defendant asserts that he has cause for failing to bring the claim earlier because the claim is based on the Supreme Court's ruling in *Miller*, which came after the filing of his initial petition. While it is true that *Miller* was not previously available to the defendant, our supreme court held in *People v. Dorsey*, 2021 IL 123010, ¶ 74, that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause." See also *Moore*, 2023 IL 126461, ¶ 40 ("As *Miller*

does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause."); *People v. Clark*, 2023 IL 127273, ¶ 93 ("*Miller* does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders.").

¶ 11 The defendant acknowledges the supreme court's rulings in *Dorsey*, *Clark*, and *Moore* but argues instead that they do not foreclose his proportionate penalties claim because they concerned *discretionary* sentences, whereas his *de facto* life sentence was *mandatory*. He reasons that young-adult offenders who received discretionary life sentences cannot establish cause because "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing" (*Dorsey*, 2021 IL 123010, ¶ 74) and offenders receiving discretionary sentences, therefore, already had the ability to argue for consideration of their youth at sentencing prior to *Miller*. On the other hand, the defendant argues that young-adult offenders like himself who received mandatory *de facto* life sentences had no opportunity or basis on which to make a youth-based sentencing argument prior to *Miller* and its progeny because Illinois courts had consistently rejected youth-based proportionate penalties challenges to mandatory life sentences raised by young adults. See, *e.g.*, *People v. Griffin*, 368 Ill. App. 3d 369 (2006); *People v. Winters*, 349 Ill. App. 3d 747 (2004); *People v. McCoy*, 337 Ill. App. 3d 518 (2003).

¶ 12 For support, the defendant cites the case of *People v. Garcia*, 2024 IL App (2d) 210488-B, ¶ 16, in which the Second District held that a defendant's postconviction claim that "the proportionate penalties clause forbids mandatory life sentences (whether natural or *de facto*) without the possibility of parole for young adult offenders who from a developmental standpoint should be treated as juveniles—is certainly not 'indisputably meritless.' " However, we are not

persuaded that *Garcia* dictates a ruling in the defendant's favor. That appeal was a review of the first-stage summary dismissal of an initial postconviction petition, and the court was, therefore, tasked with determining whether the defendant's claim was based on an " 'indisputably meritless legal theory or a fanciful factual allegation.' " *Id.* ¶ 10 (quoting *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). Whether *Miller* provides cause for a successive petition raising such a claim was not at issue, and the Second District's conclusion that the defendant's claim in that case was not indisputably meritless is not the same as saying that it has merit and warrants relief; rather, the court merely found that the defendant had an arguable basis for the claim.

¶ 13   Further, both this district and the Fourth District have reviewed this issue in the context of successive postconviction petitions and rejected the argument that our supreme court precedent allows for a distinction between young adults who received discretionary sentences and those who received mandatory sentences. See *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶¶ 45-63; *People v. Merriweather*, 2023 IL App (1st) 220440-U, ¶ 21 (unpublished order under Supreme Court Rule 23); *People v. Leach*, 2024 IL App (4th) 230298, ¶¶ 85-88.

¶ 14   In *Horshaw*, we acknowledged that there was an "inherent tension" between pre-*Miller* cases like *Griffin*, *McCoy*, and *Winters* rejecting proportionate penalties claims brought by young-adult offenders and "the interpretation of *Moore* that *Miller* cannot provide cause for proportionate penalties challenges for young adults regardless of whether the life sentence is mandatory or discretionary." 2024 IL App (1st) 182047-B, ¶ 60. Nevertheless, we ultimately concluded that supreme court precedent did not allow for a distinction between mandatory and discretionary sentences for proportionate penalties claims brought by young-adult offenders. Rather, that precedent instead indicated that such a claim "should be viewed as nothing more than an extension

of proportionate penalties claims that have existed all along and that defendant did not need *Miller* or *Miller*-related proportionate penalties precedent to raise the claim now at issue." *Id.* ¶ 62.

¶ 15 In *Merriweather*, we held that the distinction between discretionary and mandatory life sentences was "irrelevant" and that Illinois cases such as *Moore* holding that *Miller* and its progeny do not provide cause for a young-adult offender to raise a proportionate penalties claim in a successive petition "apply to both claims involving discretionary life sentences and those involving a mandatory life sentence." 2023 IL App (1st) 220440-U, ¶ 21. Additionally, in *Leach* the Fourth District noted that "nothing in *Moore* suggested a distinction between discretionary and mandatory sentences," and it recognized *Moore*'s statement that " '*Miller* did not change the law applicable to *young adults*." (Emphasis in original.) 2024 IL App (4th) 230298, ¶¶ 86-87 (quoting *Moore*, 2023 IL 126461, ¶ 42). Instead, the panel in *Leach* concluded that the defendant's argument that a distinction existed between discretionary and mandatory sentences for young adults relied on "selective reading" of the caselaw. *Id.* ¶ 87.

¶ 16 We agree with the decisions in *Horshaw*, *Leach*, and *Merriweather* that it is clear from the supreme court's decisions in *Dorsey* and *Moore* that *Miller* does not provide cause for a young-adult offender who received a *de facto* life sentence to raise a proportionate penalties claim in a successive postconviction petition, regardless of whether the sentence was mandatory or discretionary. As plainly stated in *Moore*, "*Miller* did not change the law applicable to young adults" (2023 IL 126461, ¶ 42) and "does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause" because it "does not apply directly to young adults" (*id.* ¶ 40). Accordingly, the circuit court did not err in finding that the defendant did not

demonstrate cause. Because the defendant failed to establish cause, we need not address prejudice (see *id.*), and we affirm the dismissal of the defendant's petition.

¶ 17    Affirmed.

¶ 18    JUSTICE OCASIO, specially concurring:

¶ 19    I concur in the decision of the court. The Illinois Supreme Court has made it crystal clear that *Miller v. Alabama*, 567 U.S. 460 (2012), does not provide cause for a defendant to raise a challenge to his sentence under the state constitution (see Ill. Const. 1970, art. I, § 11) in a successive postconviction petition. *People v. Hilliard*, 2023 IL 128186, ¶ 28 (citing *People v. Dorsey*, 2021 IL 123010, ¶ 74).

¶ 20    I write separately only to echo the observation in *Horshaw* that, as a practical matter, this leaves defendants in Chavez's position with no avenue for relief to which they may be entitled. See *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶¶ 60-61. In Illinois, rehabilitative potential is not merely one aspect of proportionality in sentencing. It is an express constitutional goal. See Ill. Const. 1970, art. I, § 11 ("All penalties shall be determined both according to the seriousness of the offense *and with the objective of restoring the offender to useful citizenship*." (Emphasis added.)); see also *People v. Clemons*, 2012 IL 107821, ¶¶ 36-40 (explaining that the rehabilitation clause provides greater restrictions on sentencing than the eighth amendment and Illinois's analogous proportionality requirement). By definition, a mandatory life sentence defeats that objective by foreclosing any opportunity for release and re-entry into society based on demonstrated rehabilitation. Chavez's claim in this case is based on his right to be sentenced with the objective of rehabilitation in mind—a right that our state's fundamental law guarantees. It is deeply troubling that our decision leaves him no way to vindicate it.